## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION

| | | |
|---|---|---|
| **ROLEX WATCH U.S.A., INC.** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 4:20-cv-01060** |
| **v.** | § | |
| | § | |
| **BECKERTIME, LLC and MATTHEW BECKER** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion for Summary Judgment (ECF Nos. 41–44), filed on July 9, 2021; Defendants' Response (ECF Nos. 54–57), filed on July 30, 2021; Plaintiff's Reply (EFC No. 61), filed August 13, 2021; Defendants' Motion for Summary Judgment (ECF Nos. 45–47), filed on July 9, 2021; Plaintiff's Response (ECF Nos. 50–51), filed on July 30, 2021; and Defendants' Reply (ECF No. 62), filed August 13, 2021. Having considered the motions, briefing, and applicable law, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion (ECF No. 41), and **DENIES** Defendants' Motion (ECF No. 45).

### I.      BACKGROUND

This trademark infringement dispute stems from the Lanham Act and involves allegations of counterfeit and infringing use of Rolex's trademarks. BeckerTime's[1] sales of "refurbished" luxury watches gives rise to this lawsuit. BeckerTime has been in the watch business since 1998. Defs.' Mot. Summ. J. Br. 3, ECF No. 46. BeckerTime self-describes its busines as "specializ[ing]

---

[1] The Court refers to Defendants collectively as "BeckerTime" throughout. This additionally encompasses Becker.

in buying, selling, and trading pre-owned luxury timepieces." *Id.* It further states, "BeckerTime's business consists of reselling vintage Rolex watches, making repairs to Rolex watches, and selling refurbished Rolex watches." *Id.* The parties disagree on whether these watches are "Rolex Watches" or "Altered Watches" for the purposes of this lawsuit.

In September 2020, Rolex sued BeckerTime, alleging counterfeit and infringing use of Rolex's trademark in connection with the advertising, promotion, service, and sale of watches and watch parts that are not authorized or sponsored by Rolex and that are not genuine products of Rolex. Compl. 1, ECF No. 1. Both sides[2] move for summary judgment. *See* Pl.'s Mot., ECF No. 41; Defs.' Mot., ECF No. 45. Rolex moves for summary judgment on all its asserted claims and all BeckerTime's affirmative defenses. *See* Pl.'s Mot., ECF No. 41. BeckerTime seeks summary judgment on the issue of liability and its affirmative defense of laches. *See* Defs.' Mot., ECF No. 45. The motions are now ripe for the Court's consideration.

## II.   LEGAL STANDARD

### A.  Summary Judgment Standard

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is

---

[2] Defendants filed all relevant documents jointly, therefore there are two sides.

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the Court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion. *Id.* at 250.

## B.  Trademark Infringement Standard

"Lawsuits for infringement of a registered trademark are governed by Lanham Act Section 32(1)." *Supreme Assembly, Order of Rainbow for Girls v. J.H. Ray Jewelry Co.*, 676 F.2d 1079, 1082 (5th Cir. 1982); *see also* 15 U.S.C. § 1114. "To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

To determine if a mark is legally protectable, courts look to see if the mark is registered and incontestable. "A certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . of the owner's ownership of the

mark, and of the owner's exclusive right to use the registered mark in commerce." *See* 15 U.S.C. § 1057(b); *see also* 15 U.S.C. § 1115(a). Upon "continuous use for five years subsequent to the date of" registration of a mark and provided such mark "is still in use in commerce" the mark becomes "incontestable." *See* 15 U.S.C. § 1065.3. "To the extent that the right to use the registered mark has become incontestable . . . the registration shall be conclusive evidence of the validity of the registered mark . . . of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." *See* 15 U.S.C. § 1115(b).

To prevail on a claim for trademark infringement, a party must show use of the mark "creates a likelihood of confusion in the minds of potential consumers." *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000). "'Trademark infringement occurs only when the use sought to be enjoined is likely to confuse purchasers with respect to such things as the product's source, its endorsement by the plaintiff, or its connection with the plaintiff.'" *Supreme Assembly*, 676 F.2d at 1082 (quoting *Ky. Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 388 (5th Cir. 1977)). "'Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion.'" *See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (quoting *Westchester Media*, 214 F.3d at 663–64).

"In determining whether a likelihood of confusion exists, courts consider the following nonexhaustive list of factors: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) evidence of actual confusion." *Westchester Media*, 214 F.3d at 664 (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998)) (other citations omitted). "Courts also consider

(8) the degree of care exercised by potential purchasers." *Bd. of Supervisors*, 550 F.3d at 478

(citing *Am. Rice*, 518 F.3d at 329). "No single factor is dispositive, and a finding of likelihood of

confusion does not require a positive finding on a majority of these 'digits of confusion.'"

*Westchester Media*, 214 F.3d at 664 (quoting *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d

145, 150 (5th Cir. 1985)). "The court is also free to consider other relevant factors in determining

whether a likelihood of confusion exists." *Id.*

Courts recognize that "in the case of a counterfeit mark, likelihood of confusion is clear."

*Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008) (quoting *Microsoft

Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 (S.D. Tex. 2000)). Further, in

cases involving the Lanham Act, "the presence of a likelihood of confusion disposes of the issue

of infringement." *Westchester Media*, 214 F.3d at 664.

## C. Individual Liability Standard

"There can be no doubt that a trademark, like a patent, can be infringed by an individual."

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1349–50 (5th Cir. 1994) (citing

*Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968)). A trademark

"is infringed when an individual performs the act." *Mead Johnson*, 402 F.3d at 23. "The fact that

the persons thus acting are acting for a corporation also .. . does not relieve the individuals of their

responsibility." *Id.* Accordingly, an individual may be liable for infringement if they "controlled

and directed the acts of the corporation" and "caused the infringing acts." *Id.*; *see also Kori Corp.

v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir. 1985) (affirming the

district court's assessment of individual liability).

## III.   ANALYSIS

Rolex moves for summary judgment on all its claims and for dismissal of BeckerTime's

affirmative defenses. In its cross motion, BeckerTime moves for summary judgment on Rolex's Lanham Act claims and on BeckerTime's laches affirmative defense. The Court first addresses the Lanham Act arguments.

## A.  Trademark Infringement under 15 U.S.C. § 1114

"To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice*, 518 F.3d at 329. Generally, eight "digits" (or factors) are used to determine whether a likelihood of confusion exists. *Id.* Rolex argues in "cases like the present one 'where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are open and shut and do not involve protracted litigation to determine liability for trademark infringement.'" Pl.'s Mot. Summ. J. Br. 16, ECF No. 43 (quoting J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:20 (5th ed.)); *see also Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1192 (6th Cir. 1988). BeckerTime counters, claiming, "[Rolex] is not entitled to summary judgment predicated on its claims because there is a genuine dispute of material fact as to any likelihood of confusion, which is the *sine quo non* of Lanham Act infringement claims." Defs.' Resp. 1, ECF No. 55.

BeckerTime goes further in their motion, arguing Rolex cannot meet its burden to show a likelihood of confusion to satisfy its Latham Act claims. Defs.' Mot. Summ. J. Br. 24, ECF No. 46. BeckerTime argues Rolex fails to introduce evidence showing there is sufficient actual *or* likely confusion. *See id.* at 16 ("Thus, Rolex relies entirely on inference and the premise that whatever minimal actual confusion exists, it must be sufficient to prevail on its claims. That is simply not so.").

### 1.  Element 1, legal protectability

"When a registration is incontestable 'the registration shall be conclusive evidence of the validity of the registered mark . . . of the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark in commerce.'" Pl.'s Mot. Summ. J. Br. 15, ECF No. 43 (citing *Coach, Inc. v. Eye Candy Shoes and Accessories*, No. 09-cv-2169, 2010 WL 11561845 at *3 (N.D. Tex. Dec. 16, 2010) (quoting 15 U.S.C. §1115 (b))). Plaintiff argues, "Rolex is the owner of each of the asserted trademarks and registrations and has filed the necessary declarations with the Trademark Office to achieve ***incontestable status.***" Pl.'s Mot. Summ. J. Br. 15, ECF No. 43 (citing Appx. 293 [Esposito ¶ 6]; Appx. 9-27 [Ex. 1]).

The undisputed evidence before the Court shows Plaintiff's trademarks have been registered on the Principal Register of the United States Patent and Trademark Office for more than five years. *See* Pl.'s Mot. Summ. J. Br. Ex. 1, ECF No. 43. The proffered certificates of registration constitute prima facie evidence of the validity of Plaintiff's trademarks and of Plaintiff's ownership of these marks. *See* 15 U.S.C. §§ 1057(b), 1115(a). The Court finds there is no genuine dispute of material fact as to either the ownership or the validity of Plaintiff's marks. The Court thus finds Plaintiff met its burden of showing their marks are legally protectable. *See, e.g. Am. Rice*, 518 F.3d at 329. Therefore, the first element is satisfied, but this is not independently sufficient.

### 2.  Element 2, likelihood of confusion

The Court next addresses the digits of confusion. "The digits are a flexible and nonexhaustive list. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004)).

"While likelihood of confusion is typically a question of fact, summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of law.'" *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (quoting *Bd. of Supervisors*, 550 F.3d at 474. The court in *Choice Hotels International, Inc. v. Goldmark Hospital, LLC* found that granting summary judgement on the likelihood of confusion was proper when there are no genuine issues of material facts. No. 3:12-cv-0548-D, 2014 WL 642731, at *10 (N.D. Tex. Feb. 19, 2014). When analyzing the factors and overall context, the court in *Choice Hotels* found that "none of the digits of confusion clearly favors the opposite conclusion," making summary judgment appropriate. *Id.*

The same cannot be said here. Rather, the Court finds that neither party has met its burden of proving there is no genuine dispute of material fact and that neither party has shown it is entitled to judgment as a matter of law on this issue. The Court finds each of the foregoing factors present factual disputes and that summary judgment should be denied.

For efficiency's sake, the Court provides an analysis of the three factors that raise genuine dispute of fact based on the parties' arguments and evidence. Because the factual disputes on these factors are sufficient to warrant denial of summary judgment, the Court does not analyze the remaining factors at this stage.[3] The analysis of factors six through eight follow, along with an analysis of the parties' arguments regarding the sufficiency of BeckerTime's disclosures.

### i. Factor 6: Defendant's Intent

The sixth factor is the defendant's intent. Neither party offers competent summary judgment evidence regarding this factor. "Although not necessary to a finding of likelihood of

---

[3] The parties do not dispute the first two factors point in favor of granting Rolex's Motion for Summary Judgment (Defs.' Resp. 13, ECF No. 55) and the Court finds that factors three through five are not dispositive in this stage. Therefore, the discussion will be limited to factors six through eight.

confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there

is a likelihood of confusion." *Bd. of Supervisors*, 550 F.3d at 481.

Rolex argues BeckerTime's use of "Rolex's trademarks and false designation to Altered

Watches was deceptive and objectively demonstrates an intent to fool consumers into believing

that the Altered Watches are genuine Rolex Watches, or that the alterations have been endorsed

by Rolex." Pl.'s Mot. Summ. J. Br. 20, ECF No. 43. As evidence of this intent, Rolex states,

> [I]t is undisputed that some of Becker[T]ime's[4] Altered Watches include
> aftermarket bracelets, which have not been made or endorsed by Rolex, to which
> genuine Rolex clasps bearing Rolex trademarks have been added, creating the
> appearance that the entire bracelet is a genuine Rolex bracelet. This strongly
> evidences an intent to deceive consumers into believing that non-Rolex parts are in
> fact genuine Rolex parts.

*Id.* (citing Appx. 40, 44, 46, 57–58 [Ex. 2, BeckerTime Dep. at 75:13–76:10, 94:16–21, 113:6–13,

192:7–193:4]; Appx. 90–92, 99–100 [Ex. 10, BeckerTime Dep. at 72:20–73:1, 85:18–22, 168:19–

170:16]; Appx. 65 [Ex. 3, prep sheet]; Appx. 133–134 [Ex. 12, order packet]). Rolex cites *Watch*

*U.S.A., Inc. v. Forrester* to support its argument that intent should be inferred. 1986 WL 15668, at

*3 (S.D. Fla. Dec. 9, 1986). There, the court held "[the defendant], by selling watches of similar

or identical design to those of genuine Rolex products and using unauthorized copies of the Rolex

Trademarks, demonstrated an intent to derive benefit from the reputation, goodwill, and market

created by Rolex." *Id.* Plaintiff therefore asks the Court to conclude "in making this false statement

to the public, BeckerTime intended to deceive consumers." Pl.'s Mot. Summ. J. Br. 20, ECF No.

43. Rolex also points to an article written and published under Becker's name that praised Rolex

for winning a lawsuit against a business "using a similar business model as BeckerTime." *Id.* Rolex

uses this as further evidence that "BeckerTime itself knew what it was doing was wrong and

---

[4] Plaintiff consistently refers to "BeckerTime" as "Beckertime" throughout their briefing. The Court is
correcting this in all quotations, but is not noting it each time.

unlawful." *Id.*

BeckerTime counters, arguing that "disclosures that BeckerTime makes at all stages of its communications with customers . . . makes clear – at all times – that any particular watch it is selling may have an aftermarket bezel, or crystal, or band, or even a refinished dial,"[5] and "[c]ontrary to any suggestion of bad intent, this process is intended by BeckerTime to bring life back into a vintage watch, not falsely suggest that such a decades old watch is somehow new." *Id.* at 18–19.

BeckerTime disputes Plaintiff's interpretation of this article, arguing "[f]irst, Matthew Becker testified that this article was neither drafted nor approved by him, but rather was posted by a third-party marketing firm that BeckerTime had hired . . . . Second, and more importantly, proceeding to do business while knowing that Rolex does not approve of the conduct is not tantamount to misleading or confusing customers." Defs.' Resp. 20, ECF No. 55 (citing Ex. D, Appx. 46–47 (Deposition of M. Becker at 238:22–239:17)).

The Court finds these arguments raise a dispute of material fact. *Cf. Neles-Jamesbury, Inc. v. Valve Dynamics, Inc.*, 974 F. Supp. 964, 973 (S.D. Tex. 1997) ("[S]ummary judgment is rarely proper when an issue of intent is involved." (internal quotation marks omitted)).

### ii.  Factor 7: Actual Confusion

The Court next addresses the parties' arguments on the seventh factor – actual confusion – and finds that neither party offers competent summary judgment evidence regarding this factor. "A plaintiff hoping to establish that a likelihood of confusion exists in an infringement action, may utilize the following methods of proof: (1) survey evidence, (2) evidence of actual confusion, or (3) arguments based on a clear inference arising from a comparison of the conflicting marks and

---

[5] The Court addresses the issue of disclosures in greater depth in its analysis below.

the context of their use. *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc.*, 616 F. Supp. 2d 622, 640 (N.D. Tex. 2009) (internal quotation omitted). "Actual confusion need not be proven, but if consumers have confused the junior mark for the senior mark, this is the best evidence of a likelihood of confusion." *Xtreme Lashes, LLC*, 576 F.3d at 229. "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys." *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) (citations omitted).

Rolex argues that **"**[d]ocuments produced by BeckerTime confirm that it has, in fact, received numerous complaints from customers who did not realize that the watches they purchased included components that are not genuine Rolex components." Pl.'s Mot. Summ. J. Br. 22, ECF No. 43 (citing Appx. 52–55 [Ex. 2, Becker Dep. at 168:5–170:8, 170:16–173:4, 175:13–176:8, 176:10–178:4]; Appx. 67–68 [Ex. 5, customer emails]; Appx. 69–70 [Ex. 6, customer emails]; Appx. 71–73 [Ex. 7, customer emails]; Appx. 101, 103–105 [Ex. 10, BeckerTime Dep. at 176:5–21, 184:15–185:20, 186:16–188:7, 188:13–190:12]; Appx. 135–137 [Ex. 13, customer emails]; Appx. 138–139 [Ex. 14, customer emails]; Appx. 140–141 [Ex. 15, customer emails]; Appx. 142–143 [Ex. 16, customer emails]).

BeckerTime brushes these off as "isolated instances" of customers skipping the disclaimer. BeckerTime argues that, instead of relying on these examples, the Court should look to BeckerTime's reputation and longevity in the industry. Defs.' Mot. Summ. J. Br. 23, ECF 55. BeckerTime further argues "when weighed against BeckerTime's entire body of work, merely indicates a genuine issue of material fact as to the issue of confusion." Defs.' Resp 22, ECF No. 55.

Accordingly, the Court finds neither party has met their burden of proving there is no

genuine dispute of material fact on the "actual confusion" factor or that they are entitled to judgment as a matter of law on this point.

### iii. Factor 8: Degree of Care

The Court next addresses the eighth factor – the degree of care exercised by potential purchasers – and finds neither party meets their summary judgment burden on this factor. Generally, confusion is less likely with sophisticated consumers. *See Brandtjen & Kluge, Inc. v. Prudhomme*, 765 F. Supp. 1551 (N.D.Tex.1991). Courts have also held that, usually, customers are more likely to investigate higher cost items prior to purchasing. *Id.* "Rolex purchasers are very sophisticated . . . .". *Rolex Watch U.S.A., Inc. v. Meece*, No. 3:95-cv-1058-T, 2000 WL 33582648, at *6 (N.D. Tex. Jan. 25, 2000).

BeckerTime suggests that its customers were willing to pay a high price and are thus axiomatically sophisticated. Defs.' Resp. 25, ECF No. 55. But, as BeckerTime notes, the purchaser in *Meece* was buying new Rolex watches, not vintage ones, and the price reflected this. *Id.* at 9. Further, the symbol at issue there was similar, but not identical, to the Rolex symbol. *Id.* This was significant to the court's analysis because it found that, upon inspection, a sophisticated consumer would likely discover the symbol was not Rolex's. *Meece*, 2000 WL 33582648, at *6. The present case is distinguishable from *Meece*. Here, not only are the watches at a lower price point, but the symbols are also identical, as conceded. Defs.' Resp. 9, ECF No. 55.

Rolex argues "the use of a genuine Rolex bracelet clasp on an aftermarket bracelet would confuse anyone into believing the entire bracelet is Rolex." Pl.'s Mot. Summ. J. Br. 28, ECF No. 43. Rolex further argues that sophistication of consumer is inconsequential with the facts at hand, because "[e]ven the most sophisticated consumer is unlikely to detect BeckerTime's scheme." *Id.* 27. Rolex thus concludes that "they are unlikely to understand the meaning of" the terms used by

12

BeckerTime to describe the watches in question. *Id.* 27–28.

Accordingly, the Court finds neither party has met their burden of proving there is no genuine dispute of material fact on the "sophistication of consumer" factor or that they are entitled to judgment as a matter of law on this point.

### iv.   Overall Context: Disclaimer and Disclosure

BeckerTime urges the Court to look at the overall context, and specifically, their disclaimers and disclosures. *See* Defs.' Mot. Summ. J. Br. 17, ECF No. 46. The Court agrees that this holistic context is necessary, as "[n]o digit is dispositive, and the digits may weigh differently from case to case, 'depending on the particular facts and circumstances involved.'" *Xtreme Lashes*, 576 F.3d at 227 (citation omitted); *see also Scott Fetzer*, 381 F.3d at 485–86 ("Therefore, in addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis.").

Beyond their dispute on the digits of confusion, the parties disagree about whether the BeckerTime's disclosures are sufficient. BeckerTime emphasizes that "[i]n the context of repaired or refurbished goods, as entirely relevant here, disclosures matter. That is what the U.S. Supreme Court made clear in *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947)."  Defs.' Resp. 8, ECF No. 55. BeckerTime argues they fully disclose all customizations and respond to all customer inquiries "regarding the genuineness of the products" with "painstaking efforts to be as informative and transparent as possible" about each watch. Defs.' Mot. Summ. J. Br. 3–4, ECF No. 46. BeckerTime further argues "[i]t is undisputed that BeckerTime's disclosures are written in clear and concise English," and that "[Rolex] has no evidence (expert, consumer survey, or otherwise) that the wording of disclosures is inadequate or likely to cause confusion." *Id.* at 26. BeckerTime adds "there is zero chance of actual confusion." Defs.' Resp. 22, ECF No. 55.

Rolex disputes this, arguing "the description is rife with self-contradictions." Pl.'s Mot. Summ. J. Br. 25, ECF No. 43. Rolex adds that "BeckerTime falls far short of disclosing the full extent of its unauthorized modifications to the Altered Watches." *Id.* Rolex points to descriptions used as evidence of this. *Id*. Lasty, Rolex argues that, regardless of the sufficiency of the point-of-sale disclosures, "downstream purchasers of BeckerTime's Altered Watches, individuals who receive BeckerTime's watches as gifts or as subsequent re-purchasers, and members of the general public who view BeckerTime's Altered Watches, are completely unaware of BeckerTime's disclaimers." *Id.* at 26.

On September 14, 2021, BeckerTime filed a notice of supplemental authority with the Court. *See* ECF No. 66. This supplement provided further argument based on the Second Circuit's recent decision in *Hamilton International Ltd. v. Vortic LLC*, where the appellate court affirmed the district court's dismissal of a party's claims for trademark infringement, counterfeiting, and unfair competition claims under the Lanham Act. *See* No. 20-3369, 2021 WL 4156266 (2d Cir. Sept. 14, 2021). The appellate court held the district court properly "focused on the likelihood of consumer confusion," applying both the foregoing factors and "the Supreme Court's decision in *Champion* . . . ." *Id.* at *3. The court reasoned that under *Champion*, "full disclosure of the identity of the restorer and the used nature of the product protects the seller of secondhand goods from liability for a claim of trademark infringement." *Id.* The court held the correct standard was to give "strong weight to the full disclosure factor while also applying the likelihood of confusion factors." *Id.* (internal quotation omitted). The court concluded the "takeaway from *Champion* is that, when a used 'genuine product' is resold after being refurbished, the seller's disclosures and the extent of a product's modifications are significant factors to consider in whether that seller is liable for trademark infringement." *Id.* "The Defendant's use of the trademark to say that the trade-marked

14

product is a constituent in the article now offered as new and changed, was therefore permissible." *Id.* at *5 n.3.

Additionally, while the court stated that Vortic was not required to prove the effectiveness of their disclosures, it also pointed out that "the company has *never* been contacted *by anyone* confused as to [Plaintiff's] affiliation with [Defendant's]." *Id.* at *6 (emphases added). That is not the case here: Rolex has successfully shown that there has been at least *some* level of confusion, as discussed above. Therefore, while pertinent, *Vortic* does not sway the Court's decision. BeckerTime's alleged disclosures raise a fact issue that is not resolvable at this stage. Accordingly, the Court finds neither party has met its burden of proving that there is no genuine dispute of material fact on the sufficiency of BeckerTime's disclosures or that it is entitled to judgment as a matter of law on this point. When resolving all inferences in favor of the nonmovant, neither party has shown that, as a matter of law, it is entitled to summary judgment.

Because neither party met their burden of proving there is no genuine dispute of material fact on Rolex's trademark infringement claim or that they are entitled to judgment as a matter of law, the Court **DENIES** the parties' cross motions for summary judgment on this claim.

**B.** **False Designation or Origin, False Descriptions and Representations, and Unfair Competition under 15 U.S.C. § 1125(a)**

Next, the Court turns to Rolex's False Designation or Origin, False Descriptions and Representations, and Unfair Competition claim. "As a general rule . . . the same facts which would support an action for trademark infringement [under the Lanham Act] would also support an action for unfair competition." *Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*, No. 13-cv-942, 2015 WL 11120870, at *4 (N.D. Tex. Jan. 13, 2015) (quoting *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir. 1975)). "Further, the elements

of trademark infringement and false designation of origin are identical, and the same evidence establishes both claims." *Id.*

Because "the same facts which would support an action for trademark infringement would also support an action for unfair competition," and the Court has already found neither party met its burden for the trademark infringement claim, the Court **DENIES** the parties' cross motions for summary judgment on this claim. *See id.*

### C. Trademark Counterfeiting under 15 U.S.C. § 1114

Next, the Court turns to Rolex's Trademark Counterfeiting claim. A trademark counterfeiting claim requires likelihood of confusion and proof the defendant is using a counterfeit mark. 15 U.S.C. § 1114(1)(a). A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Because likelihood of confusion is required, and the Court has already found neither party met its burden for summary judgment on the issue of likelihood of confusion, the Court **DENIES** the parties' cross motions for summary judgment on this claim.

### D. Affirmative Defenses:

The Court now turns to BeckerTime's twelve affirmative defenses. Rolex seeks summary judgment on each defense, while BeckerTime seeks summary judgment only on laches.

#### 1. Fair use

First, the Court determines whether summary judgment is appropriate on BeckerTime's fair use affirmative defense. "As the Fifth Circuit has explained, nominative fair use "permits one to use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." *Bd. of Supervisors*, 550 F.3d at 488. For the affirmative defense of nominative fair use to apply, the use "cannot be one that creates a likelihood

of confusion" as to sponsorship or affiliation. *Id.* Stated differently, "nominative fair use claim is a claim that a mark's use is noninfringing and therefore creates no likelihood of confusion. Thus . . . a court ordinarily should consider a nominative fair use claim in conjunction with its likelihood-of-confusion analysis standard . . . ." *Id.* at 488–89. Because this defense is inextricably intertwined with the Court's confusion and disclosure analysis above, the Court finds that Rolex's motion for summary judgment on this defense should be **DENIED.**

### 2.   Waiver

"[T]o find waiver, Defendants must prove that: (1) a right existed at the time of the waiver; (2) Plaintiff had constructive or actual knowledge of the right in question; and (3) Plaintiff intended to relinquish its right." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No 07-cv-468, 2009 WL 4670435, at *5 (E.D. Tex. Sept. 4, 2009) (citing *Broadcast Satellite Int'l Inc. v. Nat'l Digital Television Ctr.*, 323 F.3d 339, 345 (5th Cir. 2003)).

Rolex argues BeckerTime failed to produce evidence "that Rolex intended to relinquish its trademark rights" and that BeckerTime acknowledged Rolex's "aggressive[] protect[ion]" of its trademarks. Pl.'s Mot. Summ. J. Br. 32, ECF No. 43 (citing Appx. 80–81 [Ex. 9, article published by BeckerTime]).

In a footnote in their response, BeckerTime incorporates by reference their affirmative defense of waiver into their argument supporting laches. Defs.' Resp. 39 n.16, ECF No. 55. Because this defense raises a factual dispute as to whether Rolex had actual or constructive knowledge, and whether it intended to relinquish its right, the Court **DENIES** Rolex's motion for summary judgment on this point.

### 3.   Estoppel

"Estoppel generally prevents one party from misleading another to the other's detriment or

to the misleading party's own benefit." *United States v. Brink*, 795 F. Supp. 2d 565, 583 (S.D. Tex. 2011). "The doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Id*.

Rolex argues "there is simply no evidence that Rolex has made a false representation to BeckerTime or concealed any material facts from BeckerTime. Nor is there any evidence supporting the other elements of estoppel." Pl.'s Mot. Summ. J. Br. 42, ECF No. 43. BeckerTime incorporates their defense of waiver into their argument supporting laches. Defs.' Resp. 39 n.16, ECF No. 55. Regardless, BeckerTime fails to plead any facts proving Rolex made false representations or concealed any material facts. Even if BeckerTime's allegation that Rolex was aware of the full extent of BeckerTime's business dealings, but simply did not sue out of "convenience and lack of priority," this is not sufficient to show false representation of concealment. Therefore, because BeckerTime failed to meet its burden of showing there is no material issue of fact regarding estoppel, the Court **GRANTS** Rolex's motion for summary judgment.

### 4. Acquiesce

In the trademark context, "an acquiescence defense required the defendant to establish three elements: (1) assurances by the plaintiff that the defendant could use the mark; (2) reliance by the defendant upon those representations, and (3) undue prejudice." *Pennzoil-Quaker State Co. v. Miller Oil and Gas Operations*, 779 F.3d 290, 294 (5th Cir. 2015). In Rolex's Motion for Summary Judgment, Rolex argues "there is simply no evidence that Rolex ever assured BeckerTime it was free to use the Rolex trademarks." Pl.'s Mot. Summ. J. Br. 33, ECF No. 43.

BeckerTime incorporates their defense of acquiesce into their argument supporting laches. Defs.'
Resp. 39 n.16, ECF No. 55. But, like estoppel, BeckerTime failed to plead any facts that would
allow a reasonable jury to find there were assurances by Rolex that the BeckerTime could use the
mark. Therefore, because BeckerTime failed to meet its burden of showing there no material issue
of fact regarding acquiesce, the Court **GRANTS** Rolex's motion for summary judgment.

### 5. Failure to Mitigate

"BeckerTime's fifth affirmative defense of failure to mitigate damages is not at issue on
this motion because Rolex does not seek any actual damages in this lawsuit. Rather, Rolex seeks
disgorgement of BeckerTime's profits from selling Altered Watches." BeckerTime incorporates
their defense of failure to mitigate into their argument supporting laches. Defs.' Resp. 39 n.16,
ECF No. 55. But BeckerTime fails to explain how Rolex could have failed to mitigate damages
when Rolex seeks disgorgement, not damages. Therefore, the Court **GRANTS** Rolex's motion for
summary judgment on failure to mitigate.

### 6. Intervening Cause

Rolex argues "BeckerTime has not identified any third party who allegedly contributed to
the harm to Rolex or explained how this could be possible." BeckerTime does counter this in their
response. *See* Defs.' Resp., ECF No. 55. In their original pleading, they alleged "the wrongful acts
of third parties proximately caused or contributed to Plaintiff's damages." Ans. 12, ECF No. 23.
But nothing further. BeckerTime fails to identify any third party that may be responsible.
Therefore, the Court **GRANTS** Rolex's motion for summary judgment on intervening cause.

### 7. First Sale Doctrine

The first sale doctrine is also known as the exhaustion doctrine. *Taylor Made*, 265 F. Supp.
2d at 739. "This doctrine holds that the trademark protections of the Lanham Act are exhausted

after the trademark owner's first authorized sale of that product." *Id.* "The theory behind the resale rule is this: when a purchaser does no more than stock, display and resell a producer's product, consumers are not confused as to the origin of the goods because the origin has not changed." *Id.*

As correctly stated by BeckerTime, "[t]he doctrine does not protect those 'who sell trademarked goods' that are 'materially different from those sold by the trademark owner.'" Defs.' Resp. 36, ECF No. 55 (quoting *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852 (N.D. Tex. 2009)). Rather, "[t]o benefit from the 'first sale' rule, the seller must 'tell the truth, and the whole truth and . . . tell it plainly.*" Dell, Inc. v. This Old Store, Inc.*, 2007 WL 2903845, at * 4 (S.D. Tex. Oct. 3, 2007).

Plaintiff argues "BeckerTime has done far more than stock, display, and resell Rolex watches. It has heavily altered the watches with non-Rolex components and has even erased and re-applied Rolex's trademarks." Pl.'s Mot. Summ. J. Br. 35, ECF No. 43. BeckerTime counters that, "[u]nder the first-sale doctrine, [Rolex] has been fully compensated for each watch that it originally sold. [Rolex] is attempting to squeeze this long-standing (and time-tested) defense by arguing trademark infringement and generalized claims or confusion in the marketplace." Defs.' Resp. 37, ECF No. 55. BeckerTime further argues it "t[old] the truth, and the whole truth . . . plainly" in its disclosures. *Id.* As discussed above, the sufficiency of BeckerTime's disclosures is an issue of fact that is not appropriate for summary judgment. Thus, because Rolex failed to meet its burden of proving there is no genuine dispute of material fact on BeckerTime's first sale doctrine defense or that it is entitled to judgment as a matter of law, the Court **DENIES** Rolex's motion for summary judgment on this claim.

### 8. Particularity of Damages

BeckerTime alleges Rolex failed to allege its "damages with the requisite particularity" in

the complaint. Ans. 12, EFC No. 23. Plaintiff counters in the motion for summary judgment, stating "this defense is irrelevant here because Rolex is not seeking damages on this motion, but is seeking only disgorgement of BeckerTime's profits. Rolex has also served an expert report setting forth the amount of profits it seeks to disgorge from BeckerTime." Pl.'s Mot. Summ. J. Br. 35, ECF 43. BeckerTime does not respond to this in their Response. *See* Defs.' Resp., ECF No. 55. Because there is no material issue of fact disputed, the Court **GRANTS** Rolex's motion for summary judgment regarding particularity of damages.

### 9.  Lack of Irreparable Harm

BeckerTime argues that because there has been no trademark infringement, there also cannot be any irreparable harm. Defs.' Resp. 38 n. 15, ECF No. 55. Rolex argues "this defense . . . is irrelevant here because Rolex is not seeking injunctive relief on this motion." Pl.'s Mot. Summ. J. Br. 35, ECF No. 43. Rolex further argues that it did suffer irreparable harm and that it intends to submit further briefing on the issue of a permanent injunction. *Id.* The Court finds Rolex failed to meet its burden of proving there is no genuine dispute of material fact on BeckerTime's lack of irreparable harm defense, or that it is entitled to judgment as a matter of law. Therefore, the Court **DENIES** the Rolex's motions for summary judgment on this claim.

### 10. Antitrust

Under the rule of reason, the party asserting an antitrust violation "has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). This showing may be made directly through "proof of actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market." *Id.* (citation omitted). It also may be made indirectly through "proof of market power plus some evidence that the challenged

restraint harms competition." *Id.*

Rolex argues BeckerTime failed to provide the necessary evidence to show a valid antitrust defense. Pl.'s Mot. Summ. J. Br. 36, ECF 43. BeckerTime responds by "conced[ing] that they cannot make out an anti-trust violation by Rolex through its regime of using trademark law to bully innocent resellers of vintage and customized, used Rolex watches as BeckerTime here." Defs.' Resp. 38, ECF No. 55. Rather, BeckerTime argues, "Rolex's twisting of trademark law and use of litigation to quash out resellers like BeckerTime, in this latter category, reeks of inequitable conduct and cannot and should not be condoned." *Id.* 39. In its original pleadings on the defense, "Plaintiff's restriction on the re-sale of its products constitutes an unlawful restraint of trade that violates, *inter alia,* federal and state anti-trust laws, and thereby also constitutes a trademark misuse." Ans. 12, ECF. No. 23. Because BeckerTime concedes it cannot meet its burden of showing an anti-trust violation, and failed to show a material dispute of fact, the Court **GRANTS** Rolex's motion for summary judgment on this issue.

### 11. Statute of Limitations

BeckerTime incorporates its defense of statute of limitations into its argument supporting laches. Defs.' Resp. 39 n.16, ECF No. 55. Texas courts use a four-year statute of limitations period for Lanham Act claims. *Mercury Luggage Mfg. Co. v. Domain Prot., LLC*, No. 19-cv-1939, 2020 WL 376609, at *1 (N.D. Tex. Jan. 22, 2020). BeckerTime incorporates its defense of statute of limitations into its argument supporting laches. Defs.' Resp. 39 n.16, ECF No. 55. As discussed below, neither party met its burden for summary judgment on the issue of laches. Specifically, neither party met its burden of showing, as a matter of law, when Rolex became aware of BeckerTime's business. But "for purposes of this motion only, Rolex will assume that its infringement claim has accrued and that it is entitled to recover only for infringements since

September 24, 2016." Pl.'s Mot. Summ. J. Br. 39 n. 6, ECF No. 43. There is no factual dispute that the date in question is September 24, 2020. *See* Compl., ECF No. 1. Thus, the Court **GRANTS** Rolex's motion for summary judgment on statute of limitations for actions that have occurred in the four years before filing the complaint. The Court **DENIES** Rolex's motions for summary judgment on this claim for any alleged infringement that occurred prior to September 24, 2016.

### 12. Laches

"Laches is an inexcusable delay that results in prejudice to the defendant." *Bd. of Supervisors*, 550 F.3d at 489. "Laches comprises three elements: (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Id.* at 489–90. "The period for laches begins when the plaintiff knew or should have known of the infringement." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). "A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Bd. of Supervisors*, 550 F.3d at 490. Courts implement a "knew or should have known" objective standard when evaluating whether there is an unreasonable delay. *Armco Inc*, 693 F.2d 1161.

BeckerTime asserts that Rolex was distinctly aware of BeckerTime's business operation, making their delay in bringing this suit, inexcusable. BeckerTime further argues that Rolex "never lodged any objection to BeckerTime's customization or modification activities, despite being fully aware of BeckerTime for over a decade." Defs.' Mot. Summ. J. Br. 7, ECF No. 46 (emphasis omitted). To support this, BeckerTime cites letters, emails, telephonic conversations, and other inquires "as to the importation or shipment to BeckerTime of used Rolex watches for service" between the parties, or between the BeckerTime and Plaintiff's counsel. *Id.* BeckerTime further

argues that "on August 31, 2021[,] [Rolex] admitted it was suspicious of BeckerTime's business, stating in an internal email that BeckerTime was another business that they 'wondered about'" *Id.* at 8 (emphasis omitted) (citing Ex. F, Appx. 160 (August 31, 2021 email re: BeckerTime)).

BeckerTime further points to an alleged instance where "in or around November 2009, Tracy Olivares, representing herself as being with 'Rolex Corporate,' placed a bid on a watch from BeckerTime on eBay advertised as 'LADIES STAINLESS STEEL ROLEX DATEJUST DATE DIAMOND WATCH (370292114776).'" Defs.' Mot. Summ. J. Br. 10, ECF No. 46. BeckerTime further cites to Olivares' inquiry about the varies parts of the watch and their customization. *Id.* BeckerTime therefore contends that "[t]his exchange is concrete evidence that [Rolex] has actual knowledge of BeckerTime's watch refurbishing business for over a decade" but did not pursue legal action. *Id.*

Rolex counters that BeckerTime's laches defense is meritless for several reasons. First, Rolex argues that BeckerTime acted in bad faith, and "[a] defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." Pl.'s Resp. 40, ECF No. 50; *see Bennigan's Franchising Co. v. Sweet Onion, Inc.*, No. 08-cv-2132-F, 2009 WL 10678373, at 2 (N.D. Tex. April 29, 2009) ("[L]aches is not an available defense to an intentional infringer."). Rolex further argues that BeckerTime's continued presence in the market constitutes "clear and willful intent to infringe and to cause consumer confusion for its own profit." Pl.'s Resp. 41, ECF No. 50.

Rolex further argues that BeckerTime failed to meet its burden of showing Rolex unreasonably delayed the filing of this lawsuit. Pl.'s Resp. 41, ECF No.50. Rolex alleges it "first learned about BeckerTime's website and its sale of Altered Watches in November 2019 as part of Rolex's investigation of the sales of Rolex watches on various third-party sites at that time." Pl.'s

Resp. 41, ECF No. 50 (citing Opp. Appx. 500 [Esposito]). Therefore, this lawsuit would have been filed within a year of Rolex discovering BeckerTime's activities. This creates an issue of fact regarding when Rolex knew of BeckerTime's business dealings. Rolex further agues about the sufficiency of the evidence that BeckerTime relies on in its motion. As stated above, Plaintiff has shown a sufficient factual dispute as to the intent of BeckerTime, and the Court accordingly declines to rehash its earlier analysis here. Because neither party has met its burden of proving that there is no genuine dispute of material fact as to BeckerTime's laches defense, or that it is entitled to judgment as a matter of law, the Court **DENIES** the parties' cross motions for summary judgment on this defense.

### E. <u>Disgorgement</u>

Under the Lanham Act, there are two forms of monetary relief – disgorgement and ordinary damages. 15 U.S.C. § 1117. Disgorgement of wrongfully gained profits is an equitable remedy and is to be awarded "with the principles of equity." *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 14921, 1495–97 (2020) (quoting 15 U.S.C. SEC 117).

Courts should consider the following factors in determining whether disgorgement is appropriate:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998). As discussed above, the Court finds that intent is a question of fact that neither party has met the burden of proving. This alone is insufficient to deny summary judgement, so the court looks at other factors. *See Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 544 (S.D. Tex. 2013) ("[G]enuine disputes of material facts preclude a ruling of summary judgment for the [defendant's] profits. The first

factor—intent to confuse or deceive—though not dispositive, is an important factor which must be considered when determining whether an accounting of profits is appropriate." (internal quotation marks omitted)).

Regarding the diversion of sales, Rolex argues that BeckerTime conceded that Rolex's biggest competitor is other Rolex watches. In response, BeckerTime argues Rolex failed to present any "evidence that consumer[s] would have bought a new Rolex but for BeckerTime's actions" or of lost sales generally. Defs.' Resp. 43, ECF No. 55. Next, BeckerTime argues that an injunction would be an adequate remedy if Rolex ultimately prevails. The fourth element ties in closely to laches, and the Court has already found that whether Rolex unreasonably delayed in asserting its rights is a question of fact. The Court finds no need to further analyze the remaining factors, because Rolex failed to show, as a matter of law, there are no factual disputes. Therefore, the court **DENIES** summary judgment.

## F. <u>Personal Liability</u>

Rolex additionally requests that the Court grant summary judgment regarding Becker's personal liability. Rolex argues that this is proper because "there can be no doubt that Becker 'controlled and directed the acts of the corporation' and 'caused the infringing acts.'" Pl.'s Mot. Summ. J. Br. 30, ECF 43 (quoting *Coach*, 2010 WL 11561845, at *4). Rolex points to Becker confirming that he has "final say in BeckerTime's decisions" regarding the watches in question. Pl.'s Mot. Summ. J. Br. 30, ECF 43 (citing Ex. 2, Becker Dep. At 195:20–22)). The Court finds that it is futile to decide this issue at the current stage, because there has been no determination of liability. Therefore, the Court **DENIES** summary judgment on the issue of personal liability.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment (ECF No. 41) and **DENIES** Defendants' Motion for Summary Judgment (ECF No. 45). The Court **GRANTS** Plaintiff's motion for summary judgment on estoppel, acquiescence, antitrust, particularity of damages, intervening cause, failure to mitigate and, in part, statute of limitations. The Court **DENIES** Rolex's motion for summary judgment on fair use, waiver, irreparable harm, first sale doctrine, disgorgement, and personal liability. The Court **DENIES** both parties' motions for summary judgment on the Lanham Act claims and laches.

**SO ORDERED** on this **21st day** of **September, 2021**.

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**