IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ROLEX WATCH U.S.A., INC. | § § § |
| Plaintiff, | § § |
| | §   CIVIL ACTION NO. 4:20-cv-01060 |
| v. | § § |
| BECKERTIME, LLC and MATTHEW BECKER | § § § § § |
| Defendants. | § |

**MEMORANDUM OPINION & ORDER**

  This is a trademark infringement dispute brought under the Lanham Act and involves allegations of counterfeit and infringing use of Rolex's trademarks. BeckerTime's[1] sales of "refurbished" luxury watches gives rise to this lawsuit. BeckerTime has been in the watch business since 1998. Defs.' Mot. Summ. J. Br. 8, ECF No. 46. BeckerTime describes itself as "specializ[ing] in buying, selling, and trading pre-owned luxury timepieces." *Id.* It further states, "BeckerTime's business consists of reselling vintage Rolex watches, making repairs to Rolex watches, and selling refurbished Rolex watches." *Id.* The parties disagree on whether these watches are "Rolex Watches" or "Altered Watches" for the purposes of this lawsuit.

  In September 2020, Rolex sued BeckerTime, alleging counterfeit and infringing use of Rolex's trademark in connection with the advertising, promotion, service, and sale of watches and watch parts that are not authorized or sponsored by Rolex and that are not genuine products of Rolex. Rolex seeks to enjoin BeckerTime from infringing its trademark and to force it to disgorge its profits related to infringement. The Parties waived a jury and on October 25, 2021, presented

---

[1] The Court refers to Defendants collectively as "BeckerTime" throughout.

1

their case. The following are the findings of fact and conclusions of law.

## FINDINGS OF FACT:

### A. Finding of Facts Regarding Rolex and BeckerTime:

Rolex is a New York corporation with a principal place of business in New York. Rolex sells luxury watches. Rolex watches include the following components: the watch movement, the watch case, the dial, the transparent crystal that covers the dial, the hands, the bezel, and the watch bracelet (sometimes called a watch band or strap). Additionally, Rolex has a legally protectable interest in the following trademarks: 0,101,819 (ROLEX); 0,239,383 (OYSTER); 0,520,309 (PRESIDENT); 0,657,756 (Crown Design); 0,674,177 (DATEJUST); 0,683,249 (GMT-MASTER); 0,733,081 (COSMOGRAPH); 0,860,527 (SEA-DWELLER); 0,875,616 (MILGAUSS); 1,105,602 (OYSTER PERPETUAL); 1,749,374 (YACHT-MASTER); 1,782,604 (SUBMARINER); 1,960,768 (ROLEX DAYTONA); 2,331,145 (DAYTONA); 2,445,357 (EXPLORER II); 2,518,894 (EXPLORER); 2,953,542 (AIR-KING); and 2,985,308 (GMT-MASTER II) (collectively referred to as the "Rolex Trademarks"). These Rolex Trademarks have been used consecutively for over five years and is still in use.

Each new Rolex watch is covered by a 5-year manufacturer's warranty. Rolex services its watches through service centers in New York, Dallas, Los Angeles, and Lititz, PA. Additionally, qualified Official Rolex Jewelers ("ORJs") operate service centers throughout the United States. Rolex watches serviced by Rolex or its ORJs come with a two-year service warranty. Rolex sells genuine watch components to ORJs, allowing them to service the watches. Rolex additionally sells genuine Rolex parts to non-ORJ jewelers. Once a watch has been altered with parts that are not genuinely Rolex, Rolex will not guarantee the quality, performance, or function of the watch. Servicing a watch with nongenuine parts voids Rolex's warranty. Rolex will not service a watch

with non-genuine parts unless Rolex is permitted to restore the watch to one made up of entirely genuine Rolex parts. There is a strong secondary market for used Rolex watches that is, at least in part, a result of Rolex's quality and longevity. Rolex watches can last for decades if properly cared for. Rolex does not sell used watches.

BeckerTime LLC is a Texas limited liability company. Matthew and Carolyn Becker are the sole owners and officers of BeckerTime. Matthew Becker makes the major decisions at BeckerTime. BeckerTime uses www.beckertime.com, www.instagram.com/beckertime, www.facebook.com/Beckertime, and www.ebay.com/usr/beckertime to promote and sell their watches.

BeckerTime sells preowned watches that contain Rolex branded parts. Watches sold by BeckerTime are identified as "Genuine Rolex", but they contain both Rolex and non-Rolex parts. These are the "at-issue" watches in this case. Rolex seeks an injunction to prevent future sale of these watches as well as disgorgement of profits from the past sales of at-issue watches.

Leading up to the filing of this case, Rolex purchased two watches from BeckerTime as part of its investigation. These watches are referred to as "Watch One" and "Watch Two." On these watches, BeckerTime added diamonds as hour markers to the refinished dials by drilling holes in the dials and placing aftermarket diamonds or other stones and settings in the holes. In the process of refurbishing dials, BeckerTime strips the dial down to bare metal, then, after the refurbishing process is complete, reapplies Rolex's trademarks. Rolex does not perform or authorize these modifications. Watch One's listed retail price was $4,299.98, with a comparison price of $19,050.00 labeled as "New MSRP (if all factory)." Rolex has never sold a watch matching the description of Watch One. Therefore, there can be no true MSRP price. Similarly, BeckerTime listed Watch Two's retail price as $3,3999.98 with a "New MSRP (if all factory)"

price of $17,800.00. Rolex never sold a watch that matches Watch Two's description.

The at-issue watches sold by BeckerTime contain at least one Rolex trademark. BeckerTime applied aftermarket bezels (not made or endorsed by Rolex) to some of the at-issue watches, including bezels with added diamonds. BeckerTime sometimes applies aftermarket bands or straps (not made or endorsed by Rolex) on the at-issue watches that sometimes include a genuine Rolex clasp or buckle displaying Rolex's trademarks. BeckerTime provides an "Authenticity Guarantee" for each at issue watches it sells. BeckerTime has held itself out as a "Certified PreOwned Watch Dealer" with a "Rolex Certified Master Watchmaker." But Rolex has never certified or endorsed any watchmakers. Rolex has never certified BeckerTime, its watchmaker, or any of the watches that BeckerTime sells.

The parts BeckerTime adds to the at-issue watches do not bear any markings indicating BeckerTime is the source. The parts replaced by BeckerTime, such as the bezel, dials, and bracelets are integral and necessary to the at-issue watches. The quality of the majority of BeckerTime's non-genuine Rolex replacement parts are inferior to genuine Rolex parts.

For example, Beckertime sometimes prints the phrase "Superlative Chronometer Officially Certified" on a refurbished watch. Rolex uses that phrase to signify the watch movement met certain time accuracy standards when manufactured. Beckertime does not investigate whether its watches meet those accuracy standards. The result is that BeckerTime mislabels watches to appear more valuable than they are. For instance on one occasion BeckerTime mislabeled a Rolex DATE watch as a Rolex DATEJUST watch. This shows their "authenticity certified statement" is not fully accurate, because they fail to verify the correct model of the watch.

### B. Facts Relating to Digits of Confusion:[2]

The Rolex trademarks are arbitrary and fanciful. Additionally, Rolex's trademarks are strong. The marks used by Rolex and BeckerTime are identical. Both Rolex and BeckerTime sell watches. While Rolex deals exclusively in new watches, BeckerTime does not sell new or even lightly used watches. Rolex is the exclusive distributor and warrantor of new Rolex watches in the United States and is responsible for promoting, marketing, and selling new Rolex products in this country. Rolex sells its new watches exclusively through ORJs while BeckerTime sells its watches exclusively online, there is not a brick-and-mortar store. Therefore, BeckerTime customers cannot examine watches in person prior to purchase. BeckerTime sells their watches at a lower price point than a fully Rolex watch would sell for.

Rolex spent hundreds of millions of dollars on advertising in the United States in the past five years. Rolex uses many forms of advertising including print and celebrity endorsements. This has made the Rolex brand one of the best-known watch brands. BeckerTime benefits from this advertising and brand recognition. Similarly, BeckerTime intends to benefit from Rolex's brand recognition, but there is insufficient evidence to show intent to infringe on Rolex's trademarks. This is particularly true in light of the disclosers BeckerTime made to customers, discussed further below.

There is some level of actual confusion exhibited by BeckerTime's customers regarding the authenticity of BeckerTime's watches. Using "Rolex certified watchmaker" is confusing and suggests an affiliation or sponsorship. Some customers do not fully understand or fully read the description. Other customers have inquired as to the authenticity, asking for further specifications and stating they are confused as to whether the watch is fully genuine Rolex. This shows

---

[2] The parties stipulated to the facts necessary for analyzing digits 1–5, as well as many other facts pertinent in the analysis of the remaining digits.

5

BeckerTime's disclosures did not fully alleviate confusion. Similarly, BeckerTime has received complaints about the quality of the watches and complaints that the watch was not actually composed of exclusively genuine Rolex parts. This shows some actual confusion.

The product descriptions on BeckerTime's website and eBay listings indicate that the replacement parts are not genuine Rolex parts, that BeckerTime is not affiliated with Rolex, and that the alterations will void the Rolex warranty. Most customers, at a minimum, read the product descriptions. The words "GENUINE ROLEX" are more prominent than any disclosures. BeckerTime's customers are not as sophisticated as Rolex customers, but are not unsophisticated. When asked by customers, BeckerTime provides further product descriptions and reiterates that Rolex will no longer service the watches in question. Subsequent potential purchasers of BeckerTime's watches may not have the benefit viewing BeckerTime's product listings and disclaimers. BeckerTime's Altered Watches are typically sold for less than Rolex's new watches, which puts purchasers on notice that they may not be fully Rolex watches. The disclosures fail to state that the watches are labeled as different models than the actual Rolex model the watch is. Further, the disclosures mislead purchasers into thinking there is a comparable genuine Rolex, when in fact, there is not always one.

### C. Facts Relating to Defenses:

#### i. **Laches**:

Tracy Olivares worked at Rolex Watch, U.S.A. in 2009. Olivares represented herself as being with "Rolex Corporate" while inquiring about and placing a bid on a BeckerTime watch in November 2009. The inquiry requested the serial and model number, as well as information about the customizations. In responding to her email, Matthew Becker cited the description of the watch, which described the diamonds as aftermarket.

Since at least 2006, the law firm of Gibney Anthony & Flaherty ("GAF") has been Rolex's counsel. Their responsibilities include trademark enforcement throughout the United States. At a minimum, since 2010, GAF has been aware of BeckerTime. This awareness included knowledge of shipments to BeckerTime of used Rolex watches. From 2010 through 2013, Rolex and BeckerTime communicated about various watches being imported to the United States and sent to BeckerTime. When asked about the purpose of the shipment, BeckerTime responded that the watches were being sent for repair, return, or repair under warranty. Rolex never sent a cease-and-desist letter to BeckerTime.

Lisa Silvey is a paralegal with GAF. In an internal email in 2012, Silvey stated BeckerTime was a business she "wondered about." In 2013, an email chain between Silvey and other GAF employees revealed Rolex intercepted a watch that was supposed to go to BeckerTime. In the email chain, the eBay ad that the altered watch was sold through was discussed. The ad included a description of the modifications and customizations. Additionally, in 2013, an email between GAF employees referred to a BeckerTime watch as "junk." Rolex does not refer to their own, unmodified watches as "junk." In another email exchange with a partner at GAF, Silvey stated "Becker will not be getting this one!" when referencing a watch being shipped to BeckerTime.

The majority of BeckerTime's business is built around the sale of the at-issue watches. But, BeckerTime has not invested in a large amount of Rolex inventory.

  **ii. Fair Use:**

BeckerTime is not using the Rolex Trademarks to identify Rolex's products. Instead, as discussed above and below, BeckerTime uses the Rolex Trademarks to identify its own altered watches. Further, BeckerTime's statements that they employ a Rolex Certified Watchmaker, there is no such designation, suggests affiliation or endorsement by Rolex.

7

    iii. **Waiver:**

There is no evidence Rolex intended to relinquish its trademark rights to BeckerTime.

    iv. **First Sale Doctrine:**

The goods sold by BeckerTime are materially different than the original Rolex watches. BeckerTime does more than stock display and resell Rolex watches.

## **CONCLUSIONS OF LAW:**

**A. Law Relating to Infringement**

  "Lawsuits for infringement of a registered trademark are governed by [the] Lanham Act § 32(1)." *Supreme Assembly, Order of Rainbow for Girls v. J.H. Ray Jewelry Co.*, 676 F.2d 1079, 1082 (5th Cir. 1982); *see also* 15 U.S.C. § 1114; *see also* Joe Cleveland, *Fritz Garland Lanham: Father of American Trademark Protection* (2021). "To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

  To determine if a mark is legally protectable, courts look to see if the mark is registered and incontestable. "A certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1057(b); *see also* 15 U.S.C. § 1115(a). Upon "continuous use for five consecutive years subsequent to the date of" registration of a mark that "is still in use in commerce" the mark becomes "incontestable." *See* 15 U.S.C. § 1065.3. "To the extent that the right to use the registered mark has become incontestable . . . the registration shall be conclusive evidence of the validity of the registered mark . . . of the registrant's ownership of the mark, and of the registrant's exclusive

right to use the registered mark in commerce." *See* 15 U.S.C. § 1115(b). Rolex's marks are registered and incontestable. The ROLEX and Crown Design trademarks are arbitrary marks entitled to protection.

To then prevail on a claim for trademark infringement, Rolex must show BeckerTime's use of the mark "creates a likelihood of confusion in the minds of potential consumers." *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000). "Trademark infringement occurs only when the use sought to be enjoined is likely to confuse purchasers with respect to such things as the product's source, its endorsement by the plaintiff, or its connection with the plaintiff." *Supreme Assembly*, 676 F.2d at 1082 (citation and internal quotation marks omitted). "Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (citation and internal quotation marks omitted).

"In determining whether a likelihood of confusion exists, courts consider the following nonexhaustive list of factors: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) evidence of actual confusion." *Westchester Media*, 214 F.3d at 664. "Courts also consider (8) the degree of care exercised by potential purchasers." *Bd. of Supervisors*, 550 F.3d at 478. "No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these 'digits of confusion.'" *Westchester Media*, 214 F.3d at 664 (quoting *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)). "Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to

9

justify an inference that there is a likelihood of confusion." *Bd. of Supervisors*, 550 F.3d at 481. "[S]elling watches of similar or identical design to those of genuine Rolex products and using unauthorized copies of the Rolex Trademarks[] demonstrate[s] an intent to derive benefit from the reputation, goodwill, and market created by Rolex." *Watch U.S.A., Inc. v. Forrester*, No. 83–8381–Civ, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986).

"A plaintiff hoping to establish that a likelihood of confusion exists in an infringement action, may utilize the following methods of proof: '(1) survey evidence, (2) evidence of actual confusion, or (3) arguments based on a clear inference arising from a comparison of the conflicting marks and the context of their use.'" *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 640 (N.D. Tex. 2009) (citation omitted). "Actual confusion need not be proven, but if consumers have confused the junior mark for the senior mark, this is 'the best evidence of a likelihood of confusion.'" *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009) (citation omitted). "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) (citations omitted).

Even if products are almost identical, there is little likelihood of confusion when they are expensive and unlikely to be purchased impulsively. *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 (5th Cir. 1982). Confusion is also less likely with sophisticated consumers. *See Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha and Graphic Mach. Int'l, Inc.*, 754 F.2d 591, 595 (5th Cir.1985). "Rolex purchasers are very sophisticated." *Rolex Watch U.S.A., Inc. v. Meece*, No. 3:95-cv-1058, 2000 WL 33582648, at *6 (N.D. Tex. Jan. 25, 2000). But sophistication is not dispositive. *Id.* Further, sophistications relevance is limited here because the

watches are mislabeled, something even a sophisticated consumer is unlikely to know without substantial independent research or third-party evaluation.

"Post-sale" or "post-purchase" confusion is as indicative of a violation of the Lanham Act as direct purchaser confusion. *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 813–14 (5th Cir. 2019); *United States v. Yamin*, 868 F.2d 130, 133 (5th Cir. 1989).

In cases involving the Lanham Act, "the presence of a likelihood of confusion disposes of the issue of infringement." *Westchester Media*, 214 F.3d at 664. "[T]he elements of trademark infringement and false designation of origin are identical, and the same evidence establishes both claims." *Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*, No. 13-cv-942, 2015 WL 11120870, at *4 ((N.D. Tex. Jan. 13, 2015). "As a general rule . . . the same facts which would support an action for trademark infringement [under the Lanham Act] would also support an action for unfair competition." *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir. 1975). "Further, the elements of trademark infringement and false designation of origin are identical and the same evidence establishes both claims." *Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*, No. 13-cv-942, 2015 WL 11120870, at *4 (N.D. Tex. Jan. 13, 2015).

"[I]n the case of a counterfeit mark, likelihood of confusion is clear." *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000). A trademark counterfeiting claim requires likelihood of confusion and proof the defendant is using a counterfeit mark. 15 U.S.C. § 1114(1)(a). A counterfeit mark "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Bearing the original mark does not immunize items from being counterfeit. *See Meece*, 158 F.3d at 826.

"When a defendant uses a plaintiff's exact marks . . . courts within this Circuit have

11

determined that a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. 2013) (citing *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 310–11 (5th Cir. 2008)). Nonetheless, the Court will apply the digits-of-confusion test, as discussed above.

BeckerTime used Rolex marks on goods covered by the Rolex registrations, and the use was unauthorized by Rolex. BeckerTime's use of Rolex trademarks on the watches altered with non-Rolex parts is trademark counterfeiting because: (a) BeckerTime modified DATE watches to resemble more expensive DATEJUST watches; (b) BeckerTime added "Superlative Chronometer Officially Certified" despite the fact the watch was not certified by Rolex; (c) BeckerTime refinished and placed diamonds in the genuine Rolex dials; (d) Rolex did not perform or authorize the modifications, and its warranty was voided by BeckerTime's activities; (e) BeckerTime, not Rolex, stood behind the watches, but the trademark suggested otherwise; and (f) BeckerTime distributed refurbished watches without any markings or disclosures that would reach secondary purchasers. Further, the Court finds the digits of confusion point towards a likelihood of confusion and therefore infringement. The parties stipulate that both digit one and two favor a finding of infringement. The facts show that digit three is neutral, while digit four and five weigh in favor of BeckerTime, and digits six and seven weigh in favor of Rolex. Lastly, despite BeckerTime's disclosures of certain modifications, BeckerTime failed to disclose that the labeling added to the watch is incorrect.

Similarly, BeckerTime's placement of original Rolex clasps on non-genuine bracelets increased the likelihood of confusion as to the genuineness of the watch, and this activity constituted counterfeiting under the statue. Although BeckerTime argues that most watches were sold in response to customer requests, "[o]nce a product is injected into commerce, there is no bar

to confusion, mistake, or deception occurring at some future point in time." *Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 493 (S.D. Fla. 1986). Therefore, the Court finds BeckerTime infringed Rolex's trademark protection by counterfeiting Rolex watches.

### B. Law Relating to Defenses

#### i. Laches

"Laches comprises three elements: (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Bd. Of Supervisors*, 550 F.3d at 489–90 (citation and internal quotation marks omitted). "The period for laches begins when the plaintiff knew or should have known of the infringement." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). "An agent's knowledge is imputed to the corporation where the agent is acting within the scope of his authority and where the knowledge relates to matters within the scope of that authority." *In re Hellenic*, 252 F.3d 391, 395 (5th Cir. 1001). At a minimum, Rolex's agent through GAF should have known about BeckerTime in 2010, ten years prior to the filing of this lawsuit, and no later than 2013 when Silvey wrote that BeckerTime watches were junk. Rolex offers no valid justification for this delay.[3]

"A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Bd. of Supervisors*, 550 F.3d at 490; *see also Bennigan's Franchising Co. v. Sweet Onion, Inc.*, No. 08-cv-2132, 2009 WL 10678373, at 2 (N.D. Tex. April 29, 2009) ("[L]aches is not an available defense to an intentional infringer."). "The plaintiff's burden, therefore, is heavy. To foreclose the laches and acquiescence defenses, the plaintiff must offer something more than mere objective evidence to demonstrate that the defendant employed the allegedly infringing mark with the

---

[3] Silvey testified that she was not outside her responsibilities as a paralegal. This is not credible.

13

wrongful intent of capitalizing on its goodwill." *Conan Props., Inc.,* 752 F.2d at 150. It is inherent in the resale of luxury goods that sellers wish to benefit from the reputation and goodwill of the brand name. This is not sufficient to show unclean hands necessary to prevent a party from benefiting from laches. While BeckerTime intended to benefit from Rolex's reputation and goodwill, there is insufficient evidence to show it had unclean hands. Ultimately, Rolex failed to show subjective and knowing bad faith necessary to foreclose equitable defenses.

"Laches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark." 6 McCarthy On Trademarks and Unfair Competition § 31:12 (5th ed. 2021). "Measuring prejudice entails balancing equities." *Env't Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 479 (5th Cir. 1980). BeckerTime likely would not have shifted its business model to be reliant on the sale of altered Rolex watches if Rolex had brought this suit promptly. BeckerTime relied on Rolex's cooperation in building this valuable business, and Rolex assisted BeckerTime with the importation of watches for repair or return. Therefore, after balancing the equities, the Court concludes Rolex may not disgorge BeckerTime of profits, even though, BeckerTime is enjoined from further infringing activities. *See Conan Props., Inc.,* 752 F.2d at 153.

### ii. Waiver

"[T]o find waiver, Defendants must prove that: (1) a right existed at the time of the waiver; (2) Plaintiff had constructive or actual knowledge of the right in question; and (3) Plaintiff intended to relinquish its right." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 07-cv-468, 2009 WL 4670435, at *5 (E.D. Tex. Sept. 4, 2009) (citing *Broadcast Satellite Int'l Inc. v. Nat'l Digital Television Ctr.*, 323 F.3d 339, 345 (5th Cir. 2003)). BeckerTime has failed to provide evidence of Rolex's intent to relinquish its right, therefore is not protected by waiver.

### iii.  Fair Use

Nominative fair use "permits one to 'use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product.'" *Bd. of Supervisors*, 550 F.3d at 488 (citation omitted). For the affirmative defense of nominative fair use to apply, the use "cannot be one that creates a likelihood of confusion" as to sponsorship or affiliation. *Id.* (citation and internal quotation marks omitted). BeckerTime is not using Rolex marks to truthfully identify a Rolex watch, but instead their own, modified watch. Therefore, BeckerTime is not protected by fair use.

### iv.  First-Sale Doctrine

The first-sale doctrine "holds that the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product." *Taylor Made*, 265 F. Supp. 2d at 739. "The theory behind the resale rule is this: when a purchaser 'does no more than stock, display, and resell a producer's product,' 'consumers are not confused as to the origin of the goods' because 'the origin has not changed . . . .'" *Taylor Made Golf Co. v. MJT Consulting Grp.*, 265 F. Supp. 2d 732, 739 (N.D. Tex. 2003) (alternation in original) (footnotes omitted). The first-sale doctrine does not protect those "who sell trademarked goods" that are "'materially' different from those sold by the trademark owner." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852 (N.D. Tex. 2009). The watches sold by BeckerTime are materially different than those sold by Rolex. Therefore, BeckerTime is not entitled to protection under the first-sale doctrine.

## **CONCLUSION:**

The Court concludes that BeckerTime violates Rolex's trademarks by selling counterfeit Rolex watches. But Rolex is not entitled to disgorgement because BeckerTime is protected by the doctrine of laches. The Court is not persuaded by Rolex's arguments that it was outside the scope

15

of Silvey's job responsibilities to enforce Rolex's trademarks against BeckerTime. Rolex is, however, entitled to injunctive relief. BeckerTime is enjoined from selling any watches which infringe on Rolex's trademarks. Rolex is to provide briefing providing proposed injunctive language no later than February 9, 2022. Defendants shall respond to Rolex's proposal no later than February 19, 2022.

    **SO ORDERED** on this **31st day** of **January, 2022**.

                                        Reed O'Connor
                                  **UNITED STATES DISTRICT JUDGE**